**BURNS INTERNATIONAL SECURITY SERVICES, INC.,** Plaintiff

v.

**MURSOR BUILDERS, INC.,** Defendant

Civil No. 74-746

District Court of the Virgin Islands

Div. of St. Thomas and St. John

January 22, 1976

JOHN L. MADURO, ESQ., Attorney, St. Thomas, V.I., *for plaintiff*

ALEXANDER A. FARRELLY, ESQ., Attorney, St. Thomas, V.I., *for defendant*

YOUNG, *District Judge*

This is a contract action for indebtedness of $14,919.52 allegedly owing to the plaintiff, Burns International Security Services, Inc. (hereinafter "Burns") by the defendant, Mursor Builders, Inc. (hereinafter "Mursor") for security services provided by the plaintiff between November, 1972 and November, 1973. The defendant was the prime contractor on a job calling for the construction of nine buildings at the Bluebeard Housing Projects in St. Thomas. In June of 1971 Mursor placed an order with Burns for the provision of security services at the project during the construction phase. Plaintiff now sues for amounts allegedly unpaid and owing on the contract. The defendant has counterclaimed for $50,000.00, alleging that inadequate and unsatisfactory security service resulted in a diminution in the return on the construction contract in that amount. A court trial was held on December 19, 1975, after which, at an *in camera* meeting with counsel, the Court recommended that the parties again attempt to reach some type of settlement. Having been advised that their efforts were unsuccessful, I shall now render my findings of fact and conclusions.

Mursor's original order in mid-1971 requested three guards at the building project 24 hours per day (a total of nine guards each day) until further notification at a rate of $3.10 per hour. Herbert Brown, Burns' manager for the Virgin Islands, testified that this was adequate security for the four buildings then in existence. It was later developed that because of a labor strike at the construction site at the time the original order was placed, Mursor was obliged by federal insurance laws to provide as much security as possible. By November of 1972, however, with nine buildings then in some phase of construction, the requested service had been reduced to one guard. Each guard worked an eight-hour shift, with service contracted for from 4:00

p.m. to 8:00 a.m. on weekdays, and from 4:00 p.m. on Friday until 8:00 a.m. on Monday.

Security services were continued on these terms from November of 1972 through November of 1973 at which point they were terminated. The plaintiff introduced ledger cards (Plaintiff's Exhibit 3) which were regularly kept in the course of its business and which reflected a total bill for services for the period of $48,723.47, of which $33,803.95 was paid by Mursor and $14,919.52 allegedly remained unpaid. The plaintiff's case consisted of the testimony of its manager, Brown, and several exhibits, attempting to demonstrate that Mursor had received exactly the limited service for which it contracted, yet has not paid for it. Mursor, on the other hand, presented the testimony of Frank Murphy, its President, and several exhibits, to try to show that the service for which it had contracted was not adequately performed and that it suffered substantial losses due to the resultant vandalism and thefts at the building projects.

Since I do accept the plaintiff's evidence that $14,919.52 is owed by Mursor on the contract, I shall begin by addressing the defendant's complaints to see if there exists a reason why this money should not be paid. In so doing I will consider the defendant's counterclaim and the plaintiff's explanation to the various complaints.

At the defendant's insistence fourteen punch clocks were purchased by it and installed at various stations on the construction grounds to insure continuous patrolling by the plaintiff's security guards. The guard on duty was required to punch in at each station once every hour. By agreement of the parties following complaints by the guards that it was not possible to reach fourteen stations in one hour, in November of 1972 the number of punch clocks was reduced to seven. From its monitoring of the punch clock records Mursor concluded that continuous pa-

trolling was not being provided by the Burns security guards and that there were several instances of total absenteeism by the guards.

Mursor concluded that Burns was providing inadequate and unsatisfactory service and thus was responsible for the many thefts and acts of vandalism at the project site. This provided the basis for the defendant's counterclaim. Testimony was presented that during the time Burns was supplying security services funds amounting to $50,000 were needed and authorized to replace materials and equipment which had been stolen or vandalized. So Mursor contended that because of a failure of consideration it should not be held liable for any sum still owing on the contract, if any, and that it should recover from Burns for any of its property which was damaged or lost during Burns' tenure.

■ The heart of the plaintiff's answer to the defendant's charges is that the defendant received exactly what it contracted for—limited, inadequate, token security service. Having carefully reviewed all of the evidence, I must agree. Mr. Brown, Burns' manager, testified that given the large area and rugged terrain of the building site and the large number of buildings to watch, it was impossible for one guard to provide adequate security service.

Brown further testified that he had three conversations with Roger Murphy, Mursor's project manager, relating to the adequacy of the guard service. Moreover, the two men toured the jobsite three times discussing the problem. In a letter to Roger Murphy dated March 2, 1973 (Plaintiff's Exhibit 1), Brown reiterated his belief that one guard was totally inadequate security for this particular construction site. Brown indicated in the letter that he considered two guards barely adequate to cover the entire project. Brown testified that Murphy always said that he could not afford to pay for any more guards.

481

Brown noted in his letter that his company had good reason to believe that much of the vandalism had occurred during day hours when its security guards were not on duty. Given the nature of the missing items I accept this as the most reasonable explanation for the thefts. The items for which Mursor was claiming replacement costs include such things as reinforcing and structural steel, plumbing fixtures, cement, roofing materials, refrigerators and stoves, miscellaneous building materials, truck batteries, surveying equipment and tools. Because of the substantial size and weight of many of these items the most likely explanation for their unnoticed disappearance is that they were removed by employees or persons appearing to be employees during daytime hours.

■ For this, Burns cannot be held liable. Nor can it be held liable for thefts or vandalism which occurred at night but which one guard cannot reasonably have been expected to prevent. The glaring weakness in Mursor's case is that it presented no solid evidence of even one specific instance of theft or vandalism for which Burns can be held to blame. The closest it came was a single report of a break-in at the project (Defendant's Exhibit E).

■ I do find from the testimony as to the punch clock records that there were instances when the Burns' guards did not comply with their contractual obligation to patrol the grounds continuously. Moreover, there were even times when a guard did not show up at all. For these partial breaches Mursor would be entitled to an offset against the contract price had not the parties already mutually adjusted the billings to reflect any deficiencies of service. Defendant's Exhibit A, a letter from Mursor to Burns dated March 6, 1972, indicates that the contract price was reduced by $2,300.00 by agreement of the parties in satisfaction of Mursor's complaints. Extensive testimony was presented that thereafter as a result of meetings between

Roger Murphy and Burns' representatives periodic adjustments were made to deduct from the contract price for guard service hours which were claimed but for which the punch clock records showed no indication of having been provided.

The evidence most critical to my finding that Mursor is liable for the entire amount owing on the contract is the testimony of its President, Frank Murphy, that he had daily reports as to the progress of the St. Thomas construction in all of its aspects, including security. He admitted that he was aware of the reduction in the number of guards. All of the vandalism and thefts were reported to him. He acknowledged that he had discussed the subject of missing materials with Roger Murphy, his field superintendent, many times.

In simple terms this is a case of a party who contracted for a rather limited service, who was made aware daily that the service it had requested was less than adequate, but who in attempting to hold down the cost refused to increase the security service. Now, that party attempts to avoid its contractual obligation to pay by blaming the supplier for the less than adequate service which it had requested. I reiterate my finding that although Burns did not fully comply with its contractual obligations, the parties by mutual agreement adjusted the contract price to cover any deficiencies.

As some consolation to Mursor, I shall not award attorney's fees to either side. Despite the outcome this is not a case where all the equities lie on one side. I had hoped that the parties would reach some type of settlement. Since Mursor cannot recover anything on its counterclaim because it failed to present any hard evidence linking Burns to its losses, and since I do find Mursor liable for the entire unpaid amount of $14,919.52, I shall exercise my discretion to deny any award of attorney's fees to Burns.

## JUDGMENT

In accordance with the Memorandum Opinion of even date herewith, to which this Judgment is attached, and for the reasons set forth therein, it is hereby

ADJUDGED and DECREED

That the Defendant Mursor Builders is liable to the Plaintiff Burns in the amount of $14,919.52, and

That each party shall bear its own attorney's fees.